NATIONAL SANITARY RAG CO. *v.* UNITED STATES (No. 3855)[1]

---
[1] T. D. 48051.

United States Court of Customs and Patent Appeals, November 25, 1935

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 11, 1935, by Mr. Jackson; submitted on brief by appellant]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain imported cotton rags dutiable at 3 cents per pound under paragraph 922 of the Tariff Act of 1930, as assessed by the collector at the port of San Francisco, rather than free of duty as rags chiefly used for paper-making under paragraph 1750 of that act, as claimed by the importer.

The paragraphs in question read as follows:

PAR. 922. Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making, 3 cents per pound.

PAR. 1750. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste (including jute, hemp, and flax waste), shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

Attached to each of the invoices of the merchandise here involved is a written request by the importer that the imported merchandise be segregated in accordance with the provisions of section 508 of the Tariff Act of 1930, under the supervision and direction of the customs officials, at the importer's expense and risk. Although they were not dated, it may be presumed, in the absence of evidence to the contrary, that the requests were attached to the invoices at or about the time the merchandise was imported.

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer

or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

It appears from the record that at, or about, the time the merchandise was entered for consumption, a customs official, presumably the collector, designated 10 per centum of the imported bales of rags, that is, one out of every ten, for examination. Those bales were corded and sealed by customs officials, and were then taken to appellant's warehouse. More than ten days, in fact several weeks, thereafter, the corded and sealed bales were opened in appellant's warehouse, and the rags therein segregated by appellant's employees under the supervision of an inspector of customs.

It appears from the record that the procedure which was followed in the case at bar had prevailed for many years in the segregation of rags imported by appellant at the port of San Francisco, and is substantially as follows: The inspector first weighed the bales to be segregated, then the employees of appellant, mostly women, under the supervision of appellant's foreman and the customs inspector, sorted the rags "piece by piece," placing the small ones, which they considered fit only for paper stock, in one pile, and those suitable for wiping rags in another pile. When a bale of rags was thus segregated, the customs inspector weighed the ones designated by the employees as suitable only for paper-making, thereby ascertaining the respective weights of the alleged paper stock and the wiping rags. Thereupon, the customs inspector took samples from the pile of alleged paper-making rags, and placed them in a receptacle provided by the Government. This procedure was followed in the segregation of each bale of rags. The samples so taken by the inspector were delivered by him to a Government examiner of imported merchandise, who advisorily classified them as consisting of approximately 70 per centum of paper-making rags, and 30 per centum of wiping rags.

The collector accepted such advisory classification, and assessed duty accordingly.

It appears from the record that the percentage of rags of each importation claimed by appellant to be free of duty as rags chiefly used for paper-making, but which were assessed for duty as wiping rags by the collector, amounts to approximately 6 per centum in protest No. 509702–G; approximately 6 per centum in entry No. 7926 and 5 per centum in entry No. 8388 of protest No. 509703–G; approximately 7 per centum in entry No. 3221, 8 per centum in entry No. 5086, and 6 per centum in entries Nos. 4770 and 4342 of protest No. 509696–G; and 7 per centum in entry No. 5981 and 6 per centum in entry No. 6604 of protest No. 513597–G.

It further appears from the undisputed evidence of record that the United States Government is the chief user of wiping rags in the

United States; that the next largest purchasers are the railroads and the large oil industries; that other large purchasers are steamship companies, "automobile concerns and painters"; and that appellant is the largest dealer in wiping rags in the United States, although it is not the largest dealer in paper-making rags.

On the trial below, the witness Joseph Rosenberg stated that he had been manager of the appellant company for a period of thirty years, and that appellant had a branch office in Kobe, Japan, through which it ordered all rags imported by it. After describing the practice relative to, and the process of, segregating wiping rags from paper-stock rags, as hereinbefore set forth, and also describing the various classes of rags, he stated that, in addition to other qualifications, wiping rags must be not less than 10 inches in width, and a minimum size of two square feet, or 288 square inches, in area; that all large purchasers and users of wiping rags, such as the United States Government, the Atchison, Topeka & Santa Fe Railroad Co., Southern Pacific Railroad Co., the Associated Oil Co., the Western Electric Co., the American Telephone & Telegraph Co., and the "Shell Oil" Co., dealers in petroleum products, have uniform specifications as to size—not less than 288 square inches in area; and that only a very slight percentage of the minimum size—288 square inches in area—included in a shipment would be accepted by purchasers.

The witness further stated that the process of segregating wiping rags from paper stock, hereinbefore set forth, which consisted of placing rags "only fit for paper-making" in one pile, and those "suitable for wiping purposes" in another pile was followed in segregating the involved merchandise; that he particularly recalled the segregation of the involved rags, which he observed at frequent intervals, because, for the first time, the examiner "Mr. O'Leary had decided to make arbitrary allowances," rather than to follow the practice theretofore existing—that is, of granting free entry to all rags segregated and claimed by appellant to be paper-making stock; that all rags less than 288 square inches in area, including those in this importation, were used as paper-making rags, although not all of such rags had as yet been sold by appellant; that none of the rags segregated as, and claimed by appellant to be, paper-making rags were sold as wipers; that about 50 to 60 per centum of appellant's imported rags are sorted, and the remainder sold to dealers as wipers in the original bales "as is"—not segregated; that, when so sold, appellant receives a lower price, it being understood by the purchaser that a percentage will consist of small pieces; that paper-making rags were called "standard roofing rags No. 3"; and that, due to long-continued practice and experience in segregating rags, his employees could readily distinguish wiping rags from those chiefly used for paper-making, so that actual measurements were not necessary,

although occasionally, of course, a rag large enough to be classed as a "wiper" would be thrown into the pile of paper-making rags, and their attention would be called to this error by the Government inspector, Mr. Kirwan.

L. J. Kirwan, customs inspector at the port of San Francisco, was called as a witness by appellant. He testified that the rags in 10 per centum of the bales of the involved shipments were segregated in the manner hereinbefore described by the witness Rosenberg; that some of those bales contained only about 10 to 12 per centum of paper-stock rags, whereas, others contained approximately 50 per centum; that he took samples of the rags, as stated by the witness Rosenberg, because, although he was present during the entire time of segregation, it was possible for appellant's employees to put "thousands of wiping rags" in the paper-stock pile; that the samples so taken were satisfactory to him and to appellant; and that they were delivered to the examiner of merchandise. The witness was later called by the Government and testified that he had many times seen the employees of appellant "take some of the so-called rejected wipers and put them back into bales of wipers"; that the employees had done this openly; that he called the attention of Mr. Jacobs, appellant's foreman, to the matter, and was told that it was no business of his what was done with the rags after they had been segregated.

The witness Albert Jacobs stated that he had been employed by appellant for approximately twenty years, had been a foreman for more than five years, and had charge of the segregation of rags in appellant's warehouse; that he and the Government inspector were present during the entire time the involved rags were being segregated; and that the employees who did the work were so expert, due to their long experience, it was unnecessary for them to measure the rags in order to distinguish between "wipers" and paper stock. The witness also stated that all of the rags placed in the so-called paper-making piles were fit only for use as paper stock; and that the test of size was applied in the segregation of the wiping rags and those fit only for paper stock. In that connection, the witness said:

Q. What is the test that you followed as to what the employees were directed to put into the so-called paper stock pile?—A. Well, they segregated the rags, and anything that looked like a wiping rag they threw it on one side, and anything like paper stock they would throw it on the other side—two different piles.

Q. What was the test that was used? I mean by that, what are the wiping rags?—A. No test. They have been there long enough they ought to know a wiping rag without measuring it.

Q. What test? Is it a test of size?—A. Oh, of size, yes.

Q. What was the procedure in segregating them?—A. They would take a 50-pound bale and open it up and pick them up piece by piece. Anything that was too small, they would throw it aside for paper stock. Anything that was large, they would throw it aside for wiping rags.

Q. That was done continuously at the segregation of these rags, was it not?—A. Yes, sir.

Q. *And were all of the rags that were put into the so-called paper stock pile all rags that were fit for paper stock only?*—A. *Yes, sir.*

Q. And the other rags were wiping rags, is that correct?—A. Wiping rags. (Italics ours.)

The witness Julia Flynn, called by appellant, stated that she had been employed by appellant for sixteen years; that she sorted rags under the direction of Mr. Jacobs, the foreman; and that she assisted in segregating the involved rags. She then said:

A. I take the big pieces out, the wipers, and put the paper stock on one side, and wipers on the other side.

Q. How do you tell what is a paper stock rag from a wiping rag?—A. Oh, I can tell. The smaller rags are the paper stock, and the big ones are the wipers.

Q. And you have been following that system for many years?—A. Yes, sir.

Mr. D. J. O'Leary, an examiner of merchandise at the port of San Francisco, was called as a witness by the Government. He stated that he had been a customs examiner for thirty years, and had been examining and advisorily classifying wiping rags for a period of ten or eleven years; that he examined the samples of the involved rags selected by customs inspector Kirwan, and advisorily classified 70 per centum of them free of duty as paper stock, and the remaining 30 per centum dutiable as wiping rags. He stated that his "basis for a wiper," so far as size was concerned, was a rag "one foot square"; that at the time he examined and advisorily classified the involved rags he sent for Mr. Joey Rosenberg, an employee of appellant, and, in substance, testified that they had agreed that 70 per centum of the samples were entitled to free entry as paper stock, and that 30 per centum were dutiable as wipers. He further stated, however, that the advisory classification was in accordance with his own judgment. On cross-examination he said that he had never bought or sold wiping rags, but that he had learned as much about them as those who had; and that, although his idea of a "wiper" was a rag "one foot square," he would have to

qualify that * * * by saying that that one foot in size must be found in its natural element, *in and in connection with larger rags;* that that would be counted as a part of the wiping rag element in that bale. Smaller than that * * * [he] would allow to go into the discard. (Italics ours.)

He further stated that, although he knew the Navy specified that wiping rags should be of a minimum size of two square feet, he did not know that large industrial concerns so specified.

William R. Sibbett, called as a witness by the Government, testified that he was manager of the Bay City Sanitary Rag Co.; that his company was engaged in selling imported rags in wholesale quantities; that it had purchased rags from appellant; and that two square feet

was the uniform regulation for wiping rags, although some of the rags purchased from appellant were as small as about "the size of a pocket handkerchief." On cross-examination he testified that the rags purchased by his company from appellant were purchased "as is," that is, as imported and not sorted; that the prices paid for such rags were lower than the prices paid for sorted wiping rags; that he knew when he purchased them in that manner there would be a percentage below the minimum requirement of two square feet; that, although some 'consumers, such as jewelers, might use a wiping rag having an area of one square foot, they would constitute only about 10 per centum of the total number of users of wiping rags; that the chief users of wiping rags were the Government, large industrial plants, and the railroads; and that a rag having an area of 144 square inches could not be used for ordinary wiping purposes.

On this record, the trial court in an opinion by Tilson, Presiding Judge, Kincheloe, Judge, dissenting, after describing the method of segregation of the involved merchandise, as hereinbefore set forth, held that, although there was considerable evidence of record tending to establish that a—

rag with an area less than 288 square inches was not a wiping rag, and that it was fit only for paper-making,

there was no evidence as to the size of the involved rags, claimed by the importer to be free of duty as rags chiefly used in paper-making. The court further called attention to the fact that paragraph 922 provides for rags wholly or in chief value of cotton, including wiping rags, except rags chiefly used in paper-making, and stated that the evidence was wholly insufficient to establish that the involved rags were chiefly used in paper-making; and that, therefore, the importer had failed to overcome the presumption of correctness attending the collector's classification, and, accordingly, overruled the protests.

The opinion of the majority of the court contains the following statement:

Until it has been conclusively established that the rags in question or similar rags are chiefly used in paper-making, the presumption of correctness in favor of the collector's classification has not been overcome.

It is contended by counsel for appellant that counsel for the parties submitted the case to the trial court on the theory that the sole issue was whether the minimum size of a wiping rag was an area of 288 square inches, as claimed by appellant, or 144 square inches, as claimed by the Government, as evidenced by statements of counsel for both parties on the trial, and that the trial court wholly disregarded that issue. It is further contended by counsel for appellant that it clearly appears from the evidence that rags having an area less than 288 square inches are not wiping rags; that the involved rags are smaller than the minimum size required for wiping rags, and are chiefly

used in paper-making; that the court erred in holding that appellant was required to establish conclusively that the involved rags were chiefly used in paper-making, in order to overcome the presumption of correctness attending the collector's classification; and that, therefore, the judgment should be reversed.

It is contended by counsel for the Government that, in view of the fact that segregation of the merchandise was not made within the statutory time, that is, "ten days after entry," this court has no jurisdiction to pass on the merits of the issues here presented by appellant. It is further contended by counsel for the Government that if the court should be of opinion that segregation was properly made, the judgment of the trial court must, nevertheless, be affirmed, because the evidence of record is wholly insufficient to overcome the presumption of correctness attending the collector's classification.

In its petition for review in this court, appellant stated:

Your petitioner, being dissatisfied with the decision of the United States Customs Court, TD 47248, rendered September 4, 1934, on protests 509702–G/44223, 509695–G/44224 and 513597–G/44221, on cotton rags imported at the port of San Francisco, prays your court to review the questions involved therein and for such relief as to the court shall seem just.

On October 11, 1935, the day the cause was submitted to this court, counsel for appellant moved to amend the petition for review, and called the attention of the court to the following facts: That protests Nos. 509702–G/44223, 509703–G/44222, 509696–G/44224, and 513597–G/44221 were consolidated for the purpose of the trial; that the judgment of the trial court covered the merchandise involved in each of those four protests; that the protest numbers cited in its petition for review were taken from a copy of the trial court's decision, as received by counsel for appellant from the customs house in San Francisco; that, through inadvertence, for the reasons stated, appellant incorrectly referred in its petition for review to protest 509695–G/44224, when it was, in fact, protest 509696–G/44224; and that, through inadvertance, it entirely omitted from its petition for review protest 509703–G/44222, one of the protests covered by the decision and judgment of the trial court.

In view of those facts, counsel moved that the petition for review be amended by substituting protest No. 509696–G/44224 for 509695–G/-44224, and by inserting therein protest No. 509703–G/44222.

With respect to the protest which was defectively numbered, it may be said that it appears from the record that the number given it by the collector at the port of San Francisco was 44224, as claimed by appellant. In view of the facts heretofore stated, and the further fact that the Government will not be injured by such amendment, the motion is granted to that extent.

However, as no appeal was taken by appellant from the judgment of the trial court as to the merchandise involved in protest No.

509703–G/44222, within the time and in the manner provided by section 198 of the Judicial Code, 36 Stat. 1146 (28 U. S. C. §310), that portion of the motion requesting permission to insert that protest in the petition for review is denied. See 3 C. J. pp. 1069 and 1258, §§1077 and 1370.

Without intending to hold that the method of segregation followed in the case at bar was in accordance with the provisions of section 508, we are in agreement with the decision of the trial court that, due to the facts and circumstances of record, the Government is not now in a position to raise that issue. A holding to the contrary would, as stated in the decision of the trial court, permit customs officials to delay the segregation of imported merchandise beyond the ten-day period of limitation contained in section 508, and then plead its own *laches* as a basis for such a holding.

We come now to a consideration of the evidence in the case.

It is true, as argued by counsel for appellant, that the witnesses Joseph Rosenberg and Albert Jacobs testified that the rags thrown into the paper-stock pile during the process of segregation, the only rags in question here, were, due to their size, fit only to be used in paper-making. However, it also appears from the record, as hereinbefore set forth, that the witness Joseph Rosenberg stated that a little less than 50 per centum of the rags imported by appellant were sold in the original bales "as is"—not segregated—as wipers; and that those bales contained a percentage of rags having an area less than 288 square inches. It further appears from the testimony of the witness Sibbett that, as manager of the Bay City Sanitary Rag Co., he had purchased bales of wiping rags from appellant; that such bales contained rags having an area less than 144 square inches; that his company resold such rags as wipers; and that, although rags having an area less than 144 square inches were not used for ordinary wiping purposes by large industrial concerns, they were, in fact, "small wiping rags," and were used as such by about 10 per centum of the total number of users of wiping rags, such as the jewelry trade and manufacturers having "small machinery."

It clearly appears from the record, therefore, that, although rags having an area of 288 square inches and larger are more suitable for wiping purposes generally, rags as small as those here involved are actually sold and used as wiping rags, and are not, as stated by appellant's witnesses Rosenberg and Jacobs, fit only for use in paper-making. Obviously then, the sole question in the case is whether rags having an area of less than 288 square inches, which are sold and used commercially as wiping rags, and are also used in paper-making, are chiefly used for the latter purpose. If they are, they are free of duty under paragraph 1750, *supra*, as claimed by appellant. If they are not, they are dutiable at 3 cents per pound

under paragraph 922, *supra*, as assessed by the collector. Although that was the real issue in the case, we are unable to find any evidence with regard thereto.

The burden was upon appellant to establish that the involved rags were chiefly used in paper-making. Appellant having failed to establish such facts, we must hold that the majority of the trial court reached the right conclusion. We are in accord, of course, with the contention of counsel for appellant that the court erred in holding that such facts had to be *conclusively* established, in order to overcome the presumption of correctness attending the collector's classification. However, as the judgment is clearly right, it should be affirmed, although the decision upon which it is based contains an erroneous statement of the law. See 4 C. J. pp. 661, 665, inclusive, §§ 2556 and 2557; 33 C. J. pp. 1104, 1105, § 59; *Roessler & Hasslacher Chemical Co.* v. *United States*, 13 Ct. Cust. Appls. 451, 455, T. D. 41347; *United States* v. *Tausig & Pilcer*, 18 C. C. P. A. (Customs) 421, T. D. 44681; *Winter Bros.* v. *United States*, 19 C. C. P. A. (Customs) 113, T. D. 45245.

For the reasons stated, the judgment is *affirmed*.